Good morning, ladies and gentlemen. We are here for the in-bank re-argument in the case of Fisher v. City of San Jose. And we are joined once again by video from Seattle by our colleague, Judge Gould. Good morning, Judge Gould. How are you? Good morning. Yes. Good morning. I'm fine. Are you continuing the trend of bringing Los Angeles weather to Seattle? Today it's a little bit cloudy, but it's close to Los Angeles. You know, by the time we get through with the re-argument here, we'll have it to Los Angeles weather. It'll be a bright, sunny day. Anyway, good to see you, sir. Thank you. Well, are we ready to proceed, counsel? I can never tell who's on which side. We should have an appellant or an appellee, but this is fine. Good morning. You just look at the haircut. No comment. Please identify yourself and proceed, counsel. Good morning, and may it please the Court. I'm Scott Attaway, appearing for the City of San Jose, and I'd like to reserve seven minutes of my time for rebuttal, please. Whatever you have left on the clock, so long as you can go green or yellow, saying whatever number is yours. Once the City of San Jose's police officers and SWAT teams surrounded Mr. Fisher's home in the early morning hours, they had seized him for purposes of the Fourth Amendment. A reasonable person in Mr. Fisher's shoes would not have thought he was free to stay or leave. His liberty was restricted. The police had both probable cause and exigent circumstances to justify the seizure or arrest of Mr. Fisher without a warrant, as both the panel majority and Mr. Fisher have conceded. And that is what the properly instructed jury reasonably found in rejecting Mr. Fisher's Section 1983 claim, seeking civil damages against the City of San Jose, its police department, and its individual police officers. This Court should reverse and reinstate the jury verdict, as forcefully argued in Judge Callahan's dissent. Our primary theory is that the subsequent events to perfect the same lawful seizure that had already occurred in the early morning hours did not need a warrant or further exigent circumstances. Mr. Fisher was already seized as a matter of law, if not fact. That it took the police several hours longer to perfect the seizure and bring Mr. Fisher into physical custody does not re-trigger the warrant requirement of the Fourth Amendment. I'll ask you a question. If this were another person, other than Mr. Fisher, who only was trying to say the Second Amendment applied to individuals, a rather odd proposition, maybe, if it were another individual that you thought was a mass murderer, and after things had gone on for three or four hours, the department arrested the real culprit several blocks away, and you learned that the person who was arrested had been seized was not the real culprit, would you still be able to continue that, or would the exigent circumstances disappear? If I understood your hypothetical correctly, the probable cause for the arrest would have dissipated at that point, and there would not be... And at that point, if she then invaded the apartment and seized the person, would that not then be a violation? If a reasonable police officer under the totality of the circumstances would not have intervened, yes, it would have been a violation. Why is it any different if you were able to get a warrant at that time, after the house had been under siege for a number of hours? The second part of exigent circumstances is your ability to get a warrant. Why, if that changes and a number of officers leave the scene, why hasn't it dissipated in the same way that the probable cause has dissipated? Okay. Two points I'd like to make in response to that, Your Honor. First, the exigent circumstances had not dissipated. Mr. Fisher still had guns. He had 18 rifles. No, no, I'm not... This is to probe the law, and it's not Mr. Fisher. I'm just saying there are two parts to the exigent circumstances. One, you have the probable cause, and two, you don't have time to get the warrant. Now, you say the first can dissipate, can change as time goes by. The probable cause can disappear, and then the fact that you seized him doesn't give you a right to continue to invade the house or do other things. But why isn't the same rule applicable if it turns out that you can easily get a warrant and there's not that exigency either? The seizure had already occurred when the SWAT team and the police officers had surrounded his home and ordered him out, arguably hours even before that, but certainly by 6.30, 7.30 in the morning on these facts, under the Supreme Court's test for an arrest or a seizure, a reasonable person in Mr. Fisher's circumstances... No one disputes that counsel. The question is what happens if you have a seizure, right? At some point, about every moment that passes, that the seizure continues, the individual is deprived of liberty, and presumably as the balance of probabilities changes, at some point it cannot continue. Let's say, for example, just to follow up on Judge Reinhart's hypothetical, let's say he's not in the house. Let's say they've actually gotten a hold of him, they've put handcuffs behind his back, they have him sitting in the SWAT car about to transport him to the police station, and across the wire comes a police radio, comes a bulletin that says, real killer apprehended blocks away, absolutely certain identification. So they've got this guy in the car suspecting him of a crime that they now know is certainly the balance of probabilities changes. They would have a responsibility at that point to I think that's exactly right, Judge Kuczynski, but that would not invalidate... Having brought you to that point, which is really just a setup, then why doesn't every continuing moment of the seizure require either a continuing exigency or a warrant or an issuing of continuing probable cause? If any of those things cease, stop being, why doesn't the authority to seize discontinue? Even if you had it to begin with. The distinction in your hypothetical, Mr. Chief Judge, is that the police, once they found out that they had the wrong person, would have had an obligation, as you said, to release the probable cause and exigent circumstances to seize him. They had a reasonable police officer would have thought that he had probable cause to arrest this person for the murder, and there was an emergency situation, and the police had to act immediately. No one's questioning that. We're assuming that's all true. The question is, as circumstances change, as you say, even though it's a valid seizure, once they find out it's the wrong person, and they know the right person's arrested blocks away, at that point, the justification for the continuing seizure disappears. It doesn't invalidate what's happened up until then. Right. As you said, when the probable cause dissipates, then you wouldn't be able to continue with the seizure. The probable cause never dissipated here. Right. But the exigency dissipated. See, probable cause isn't enough. You either need probable cause and a warrant, or probable cause and exigency. You need those two things together to have the seizure. So, fine, for moment one, you have probable cause and exigency. Okay? You've admitted that if probable cause goes away, you've got to let him go. Well, what happens if somewhere along the way, exigency disappears? He's not going anywhere. You've got police surrounding the house. You had probable cause to seize him, but then the continuing right to seize is no longer supported by the two pillars that you need, probable cause and either a seizure, either exigent circumstances or a warrant. You don't have a warrant, and it's no longer exigent. Under the Supreme Court's test, he was initially seized, and he's continuing to be under arrest. He's effectively resisting arrest. And the fact that the police are continuing to try to bring him into custody after making the initial lawful seizure or arrest doesn't then require exigent circumstances at every moment. They've already effectively arrested him as a matter of law. So you think there are no temporal restrictions on this? In other words, you can surround a house for days, months? I mean, in the standoff, Fremont standoff in Montana, the FBI surrounded the compound for 81 days. Is it your position that there was no time that they needed to – that they were obligated to get a warrant? I think as Judge Callahan's dissent correctly noted, the relevant time for judging the exigency is at the time of the initial seizure. And the Supreme Court's decision in Michigan v. Tyler makes that clear. In that case, there was a fire. So your answer is no. You don't believe there are any temporal restrictions? On the facts here, at what point along the way was he seized? Sometime between probably 4 and 7 in the morning. It's hard to pinpoint it as a specific matter. But everyone agrees – Was it before the SWAT team showed up on the scene? I think arguably before the SWAT team because there were several officers there and there was a sharpshooter. They had asked him to come out. But certainly by the time the SWAT team arrived and then they had to spend an hour or so evacuating the neighbors to get people out of the line of fire of possible stray bullets, that exigency continued and they had full justification. And if he had walked out then – So when they informed him, I guess there was a negotiator that showed up. Correct. So is that the point when a reasonable person in those circumstances would have understood that they were not free to leave? Is that the point? I think the jury could reasonably have found that at that point, that a reasonable person would not be free to leave. And remember – it's important to remember the standard here. It's not what any of us might find as a finder of fact, but it's what a reasonable jury could have found. Just to follow up on Judge Reinhart's question, one of the instructions that was given to the jury was, furthermore, the presence of evidence in circumstances necessarily implies that there is insufficient time to obtain a warrant and therefore defendants must show that a warrant could not have been obtained in time. What were the facts that the defendants presented to satisfy this instruction that was given to the jury? Certainly until the SWAT team arrived, I mean, there was no staff around to go get a warrant. And this Court's case is looking at – Well, did they testify that there was not the ability to obtain a telephonic warrant? I'm not sure about that in the record. They knew the telephonic warrant was available. I haven't read all the testimony in the record yet, but is there any testimony that there wasn't time to make a telephonic warrant or that a magistrate judge was not available? No, there was not any testimony on that, Your Honor. Counsel, wasn't the jury asked by special interrogatory to determine whether or not the arrest was justified under the Fourth Amendment? And as Judge Paez pointed out, they were given appropriate instructions on the exigent circumstances. That's correct, Your Honor. So we would have to accept as fact the jury's determination on proper instruction of the law that the exigent circumstances continued throughout the entire period of the standoff, wouldn't we? I think the jury certainly could have found that, Mr. Fisher, and that would be something that the Court should accept. Mr. Fisher continued to pose a threat. He may have disappeared for several hours, but think about it. The standard is not what the Court knows after the event in the sanctity of chambers after everything has happened. And in hindsight, you can look back and say that moments turned into hours. The police are there in a tense, instant-to-instant standoff. They don't know what's going to happen in the next moment. They're in a deadly situation. Everyone knows and everyone agrees that there were exigent circumstances to surround Mr. Fisher's home. And if he had come out of the house in the early morning hours and been placed into handcuffs, we wouldn't be here. Everyone would agree that the arrest was properly done, even without a warrant. And as a matter of law, the arrest was accomplished in the early morning hours. The further events were just to deal with his resisting the arrest that lawfully had already happened with a warrant. And on the Supreme Court's reasoning in Michigan v. Tyler, they looked at the exigent circumstances at the moment the fire inspector entered to start looking for the cause of the fire. But is it your position that they had? But the fire inspector left for four hours and came back, and the Court found that a continuation of a valid search. They only looked at the exigency from the initial entry, the initial seizure or the search, and they didn't require the exigency to continue throughout. But even if that were the rule, I'm sorry. No, no, go ahead. Even if that were the rule, here, as I said, the police were in a tense moment-to- moment standoff. They didn't know whether it was going to be ending in the next moment or in the next ten hours. That's the point I was going to ask you about. They had time to go get a special phone, but you're saying they didn't have time to make a phone call? In hindsight, we can make all kinds of judgments about what the optimal thing would have been now that we know what the facts turned out to be. But that's not optimal. It's a question of whether there's a constitutional requirement. If there's no requirement, you don't have to do the optimal. Right. There's a legal issue, really, here. And there are two different questions. One, whether the probable cause existed at all or throughout. But that was not what I was addressing my questions to. The second half of the issue, and whether we uphold this on the jury's finding, is interesting to the parties. But if we write an opinion on what the law is, the question is, is there any obligation, as Judge Thomas said, if you surround a place for 81 days and you don't have time to get a warrant when you first surround it, does that mean you're permanently excused from getting a warrant, even though there's absolutely no reason you couldn't get one? You don't have to go get a warrant because the exigent circumstances justified the initial seizure. The Supreme Court's got case after case where they established the standard for a seizure under the Fourth Amendment. Right. Once that happens. You did say one of the two elements disappears, probable cause. You can't continue the seizure, even though it was valid at first in the examples we've talked about, when you find out it was someone else. You have probable cause to think it was A, and the seizure's valid. You find out it's B, and you agree you can't continue with the seizure. The second half of the exigency is you don't have time to get a warrant. If that disappears and you do have lots of time to get a warrant at no inconvenience, then the question is, is that not like probable cause? Circumstances have changed, and therefore you have lots of time you can get a warrant. And you say in one case, once you see that's it forever, except that you say when probable cause disappears, it doesn't continue forever. In the other case, you say when you didn't have time to get a warrant and you have 81 days to get it, that hasn't changed. Well, I think those are two fundamentally different circumstances. If the police find out that the suspect that they've lawfully taken into custody is actually not the right person because they find out new information, then obviously they can't take him down to the station house and book him for a crime that they know he didn't commit. But that doesn't invalidate what's already happened. Why not? Under your theory, they had authority to seize him, and they did, and so that continues. Why not? You say it's obvious, but why is it obvious? If the police had taken, and Judge Reinhardt's hypothetical, if the police had taken the suspect to the station house and locked him in the jail cell and then found out the information, then they would have to release him because they found out that he's not the culprit. You make it sound so easy, but why? I think it is easy. Why can't they just say, look, we had probable cause to seize you when we did, and we've got you now, so, you know, we're going to hold on to you. That wouldn't justify continuing. Why not? They had originally. They had probable cause originally. Why not? The police could not continue to hold the suspect and bring an indictment. You say the same thing. I want you to explain to me why not. Because they found out that the person they arrested was not the person that supposedly committed the crime. So why not? Is it because of the Fourth Amendment? It's not because of the Fourth Amendment. That doesn't give them any reason. It's because they don't have a substantive crime to charge this person with. They don't have any reason. They say, well, but we've got lots of jail space and we like him here, and so we'd like to keep him anyway because he's a nice guy and we'd like to keep him around. He tells good jokes to the warden. Why not? Talk to me. I mean, you know, your argument is they had probable cause to seize him. You know, why doesn't it just continue indefinitely in the future? The probable cause, I mean, if the police are going to hold someone in a jail cell, they obviously have to have a continuing reason to do it. Not reason. They might have a good reason. They might say, gee, you know, we really want him out in the streets because we think he's a ne'er-do-well and I think the world would be better off without him out in the streets. They might have a reason. What they don't have is a legal justification once they find there's no probable cause. That's what I meant when I said reason. Okay, but you see, you need two things. You don't need just probable cause. It's not enough. You need probable cause and either a warrant or exigency. Okay? You'll proceed readily that if one of those two things disappears, they've got to let him go. Why do they have to let him go if the second one disappears? If they don't, at some point they have probable cause but not the second one. But they've already accomplished the seizure. Well, they've just accomplished the seizure as well, even when they find out the guy's the wrong guy. They've accomplished it. They can't keep him. Can they keep him forever? If they don't have a crime to charge him with, then there would not be a legal justification for keeping him incarcerated. Why not? They have no justification to begin with. You have to admit that what happens is that when one of the pillars that gives them a legal justification for holding him disappears, their legal authority to hold him disappears. If they stop having probable cause, they've got to let him go, no matter how much they would love to keep him in because they like him, he's a nice guy, because they think the world would be better off without him on the streets. No matter what they think, no matter their personal view, they can't keep him because they no longer have a legal justification. But if you need two things, if you need probable cause plus either a warrant or exigent circumstances, why don't they have to let him go once the second one disappears? Unless they get a warrant. Well, once it disappears. If you no longer have exigency, they have probable cause alone, and they don't step in to substitute for a warrant for exigent circumstances. Why isn't it just like losing probable cause? Why isn't losing exigency just like losing probable cause? You've got it. Because the exigency... If I said it often enough, you would understand what I'm saying. The exigency has to exist at the time of the initial seizure. Let's assume that Mr. Fisher had walked out and submitted to the police authority and they handcuffed him. Let me change this for you just a little bit. Let's say they have probable cause, there's no exigency, and they have a warrant. And the warrant is set to expire at midnight. And right before they lay hands on him, they've gotten surrounded, and right before they lay hands on him, the clock strikes midnight. And there's no exigency. If the warrant's expired and there's no exigency, then that arrest wouldn't be justified. But here there is exigency to justify the initial arrest. Why if the exigency stops and there's no warrant, doesn't the same thing happen? I think you just talked yourself into a corner. Well, counsel, Judge Kaczynski now has me confused. There's a difference between an arrest warrant and a search warrant, is there not? There's a very big difference, yes. And probable cause never dissipated with regard to the justification to arrest Mr. Fisher. He was still armed with 18 firearms and was waving them and pointing them at police officers throughout the standoff. So the question that we're really wrestling with here is whether the officers needed a search warrant in order to enter his home to effect the arrest. And the issue would be whether or not the entry without a search warrant was justified by exigent circumstances. Am I correct? I would think that it would be an arrest warrant that they would need to make. Well, they clearly can make an arrest without a warrant if they have probable cause. But I thought you just told me that probable cause never dissipated. That's correct. Neither did the exigency. So it seems that what the chief and my colleagues are talking about really is whether or not they needed a search warrant in order to enter to effect the arrest. And that might be effected by the presence or absence of exigent circumstances. Well, they would need a second search warrant to go in and search for incriminating evidence. For example, let's say to go and search his drawers and see if he had any other contraband. That would be a different Fourth Amendment question. Did they get one? No, they didn't. And I don't believe there was a search. There's not a search that's at issue. Is there a DA on duty 24 hours around the clock in San Jose? Yes, Your Honor. I believe so. And that DA, is there a superior court judge that's on duty to handle any requests for search warrants? I believe there probably is. So it's no big deal for the DA to fill out the forms necessary to obtain a search warrant and contact the judge and get a search warrant. The process does take some time, and these police were in a moment-to-moment standoff. How long does it take? Probably a couple of hours at least. Is there a search warrant at issue in this case at all? There's not a search warrant at issue in this case. It's only the arrest, and the arrest was justified by the initial exigency. I'd like to reserve the rest of my time for rebuttal, but I'm happy to... Just one quick question. Your argument is predicated on the one seizure theory. And let's take a Terry stop, for example. You have a seizure when you make a Terry stop. There's a second seizure when someone's arrested. So when they tell Fisher that he's not under arrest and they subsequently arrest him, why is that any different from the Terry stop, arrest, two seizure circumstance? Aren't there two seizures here? The telling of Mr. Fisher that he wasn't under arrest happened very early, right after the first officer arrived. And then the SWAT team arrived several hours later, and the guy got on the bullhorn, and 50 times it's in the record said, come out with your hands up unarmed. And he said that numerous times, and Mr. Fisher didn't come out. At least by that time, a reasonable person would have thought that he was under arrest and was not free to leave. And Mr. Fisher's further actions were merely resisting the lawful arrest that had already been legally affected. The policy and the text of the Fourth Amendment were fully satisfied by the exigency and the initial seizure with probable cause. And the further acts did not need further exigency just to bring him into custody when he was resisting the lawful arrest. Let me ask you this. Let's say instead of Mr. Fisher being in an apartment, he was in a vehicle, and the officer surrounded the vehicle and pointed guns at him. Would that have constituted a seizure? Yes. Well, we have cases that just went the other way. A few years ago, we filed a dissent. Judge Choi and another judge in our circuit said no, no, they were free to leave. I'm not familiar with that decision. I was just thinking about that. It sounds like the totality of the circumstances would. I'll have to find it. But are you then conceding there were two seizures here, the initial seizure, and then they tell him he's not under arrest and there's a second seizure, but you say it occurred when the SWAT team arrived. Is that what you're saying? It happened. I'm not saying there were two seizures here. I'm saying that the jury could reasonably have found, and I believe they did, that at least by the time the SWAT team arrived that he was under arrest. And he actually testified that he thought he was going to be arrested if he went outside. If, in fact, he was not under arrest until he left, you would concede that there would be two seizures, right? If he wasn't under arrest. Yeah, hypothetically. Until he left the house. Right. Well, the Fourth Amendment doesn't have the word arrest in it. Sometimes cases interchangeably use the term seizure and arrest. But I think here there was one seizure. It happened at least by the time the SWAT team surrounded the place. Nothing changed. He didn't escape. He didn't flee. There was no intervening event to break that. And he was effectively still in police custody. It's just like if he'd come out and submitted to handcuffs, no court would hold that the police had to keep him there while they went back to the station to get a warrant to justify further intruding on his privacy interest by putting him in the squad car, driving him downtown, booking him, and putting him in a cell. No, the arrest has already occurred. The subsequent events are just to perfect that initial lawful arrest. So you disagree? Do any of these SWAT team matters, are warrants up? Are the SWAT team matters? On SWAT team matters just generally. Does your office get a search warrant or an arrest warrant? I can't speak to the general practice. I mean, these. What's your office? I'm outside counsel. But if the circumstances justify an arrest based on exigency, then a warrant is not required. And these officers testified that they thought there was sufficient exigency and they did not need to get a warrant for this particular arrest. And I submit that they were correct as a matter of law. And I would like to reserve my time for rebuttal.  Thank you. We'll hear from the other side. Good morning, Your Honors. My name is Donald Kilmer. I represent the Fishers. And I'd like to introduce my co-counsel from the trial, Mr. Limpert. The city could have avoided liability in this case by doing one of three things, either getting a warrant, trying to get a warrant, or explaining why the exigencies, such as they were, prevented them from getting a warrant. That's all that was necessary. What would your position be if they had sought a warrant and the magistrate had refused to issue it? What should the police do in that instance? They would have had to retreat and leave, Your Honor. Just leave it to the neighbors, kind of the vigilantes, to solve the problem with Mr. Fisher and his 18-year-old? Well, if the police are fearful that there are vigilantes, they should probably stick around and protect Mr. Fisher with that. I see. And they don't need a warrant to do that because that would come from the outside rather than the inside? Correct, Your Honor. I'm interested, counsel, being a formal trial judge, what happened here is this judge had a motion for a directed verdict and denied it. Correct, Your Honor. And then had a motion for a judgment notwithstanding the verdict and granted it. Correct. What's the standard of review? The standard of review on the Rule 50A motion, Your Honor, is taking the facts. Don't we have to give every benefit of the doubt to the jury, to the non-moving party and the jury and their evidence? Factual inferences must be resolved in favor of the non-moving party, correct? Yeah. And in this particular instance, the jury had a jury instruction that said, furthermore, the presence of exigent circumstances, my good colleague Judge Pai has read this, necessarily implies that there is insufficient time to obtain a warrant and, therefore, the defendants must show that a warrant could not have been obtained in time. And with that jury instruction, this jury still found that there was no constitutional violation, didn't they? That's correct, Your Honor. And, therefore, this jury, having a circumstance where there's a drunken drinking man with 18 guns, he's loading them, he's placing them all over the house, he's pointing the guns at the officers, he tells one officer to come right on in and I'll shoot you, and during all of this situation, you're saying there's insufficient evidence to support this jury verdict? I am, Your Honor. Why? Under any of these, I love hypotheticals and my colleagues seem to like them better than I do, but we've got a particular case here. We don't have a case of 80 days or we don't have a case where a guy's running off in another direction. We've got a case where a jury had this situation squarely in front of them, decided that there was exigent circumstances throughout the situation, given all that you want to say about it, that they threw in a phone, they threw in an extra situation so they could get rid of the fire, they did all kinds of things, they had all different ways to maybe this wasn't an exigent circumstance, but this jury came down and said there was an exigent circumstance. And then this judge, on his own idea, me being a trial judge wondering where in the devil they were, said I don't think there's any evidence here. Your Honor. That's the question. We can talk about hypotheticals all day, but the question is we've got a motion to undo the jury's verdict with all of the jury instructions in front of it. Yes, Your Honor. The city's problem is that the only thing that could possibly save this verdict is an inference that the jury could have drawn from the evidence, because the city put on no evidence that the exigent circumstances delayed their ability to get a warrant. They put on no evidence that they tried to get a warrant. In fact, most of the testimony from the officers was they said they didn't even think a warrant was necessary. Well, but even that, this is what the jury was told. The presence necessarily implies there was insufficient time to get the warrant, and the defendants must show the warrant could not have been obtained in time. Now, that's what the jury had in front of it. The jury knew it had to think about that, and this judge on his own said or on her own, sorry, said forget it. I'm going to put my idea in this. This is not a summary judgment where we can talk about hypotheticals. This is not a situation where we have hypotheticals to discuss. We have sufficient facts, and this jury decided it. No, Your Honor. What we had is an inference that the jury could have drawn from the facts because the city put on no evidence that they were prevented from trying to get a warrant. Let me ask you if I can follow up on Judge Smith's question. It also goes back to my concern here about the jury instructions. As I understand what happened in the trial court, there really were no disputes about the instructions that were given to the jury. Is that correct? Correct, Your Honor. Okay, so there's one set of instructions that defines probable cause, and then there's another set that defines exigent circumstances, and the first part of the exigent circumstances instruction, which I did not point to, defines in ways of threat what is an exigency. Correct. It talks about threat to the community, threat to the, you know, it looks at threat. It goes on to say, and this is what I was trying to follow up with Judge Reinhardt, it goes on to say that as part of that exigent circumstances, taking Judge Smith's restatement of that language from the jury instructions, at the end it says defendants must show that a warrant could not have been obtained in time. Correct. Okay. Now, what I understand happened here is that the district court judge on a Rule 50A said, I'm not going to grant a Rule 50A, heard all the evidence and came back on Rule 50B, and taking all the evidence in light most favorable to the nonmoving party, here the city because they prevailed, the judge looked at all the evidence, and as I understand from what she did after reading it several times and trying to figure out what she was up to here, she essentially said that the defendants did not show, there's no evidence to show that they could not have obtained a warrant in time. I believe that's correct. I think that's what she said. So let me ask you this. If I were to sit down and read the trial transcript from beginning to end, what would I find that would support this jury instruction in the evidence? I'm not sure I understand the question, Your Honor. You're asking me to prove a negative? Well, they had a burden, right? The instruction told the jury that the defendants must show that a warrant could not have been obtained in time. It was their burden. Right. So presumably there's some evidence in the record. Your Honor, actually what there is, is there's an inference that a rational jury could have drawn, and then there's actually my concession in the motion and in my briefs, that between the initial time when Mr. Fisher started making criminal threats and the last time anybody saw him with a gun, which was I believe a period or a window of about four hours, that a reasonable jury could have inferred that there was no time to get a warrant because of the limited number of officers present and the danger. The problem was is that after Mr. Fisher was last seen with a gun, you have another eight hours where there was sufficient time. There were 60 officers present. They were monitoring a football game. They were talking to reporters, and nobody thought to get a warrant. Time to do what? Excuse me, Your Honor? Time to do what? Time to at least make the effort. But to do for what purpose? Well, to have a neutral and detached magistrate observe the ---- What do they have time to get authorization to do? What's the purpose of it? To get the warrant, Your Honor. Well, for what? To arrest Mr. Fisher for criminal threats. He already was under arrest. He was already seized. So do you get two warrants? If it takes a long time to accomplish, he was totally surrounded. He's totally unfree to go. So what is the point of getting a warrant? So I'm asking, what do you get the warrant for? One of the linchpins of the city's case is, of course, the reliance on al-Azawi, the idea that the moment you're surrounded, you're under arrest. Well, surely you don't disagree with that. Well, I don't disagree with it, Your Honor, but I think it's only a partial description. It's a sufficient definition of arrest for Fourth Amendment purposes, but it's not a complete definition because, as we have in this case, Mr. Fisher did not submit to authority. If one were to disagree with your implicit premise that he was not under arrest at least by 730, then do you agree that there's no point to a warrant? I don't think I'd ever concede that there's no point to a warrant, Your Honor. to continue escalating the situation using greater and greater amounts of force and, in fact, keep telling Mr. Fisher that you're not under arrest. Okay. When an arrest is being effected, is the law enforcement officer supposed to go through some calculus that, gosh, it's taking X amount of time or it's getting X amount more difficult, so, therefore, I need to get a warrant to arrest, which I already have done? That's an excellent point, Your Honor, because I think there's only two ways to fashion a remedy for situations like this. One is to take, for instance, the Dorman factors that we found out of the District of Columbia case, where there, I believe, are six factors, and I think the academic in other cases criticizing or talking about Dorman added another two factors, and I think it is probably unreasonable to have a police officer at the scene going through elements of arrest and what's the definition of exigent circumstances. I think the better rule is the one that we have in Fisher, and that is that we can trust police officers to know when there's probable cause, we can trust police officers to know when there are exigent circumstances, and then the only other thing they have to do is explain why those, why the exigent circumstances precluded them from getting a warrant. It's a very much simpler fact pattern, and in my opinion, actually more fair to the police. Well, I keep coming back to the same question. Getting a warrant for what? To arrest Mr. Fisher in his home. Because they've already had. Well, part of this case- What she's really asking for is a warrant approved by a judge that would approve of the tactics of the police, that on the basis of this piece of paper, you can now deploy tear gas, you can now use flashbang devices, you can now bring one of those armored vehicles and push his door in in order to get him, and that's not the job of a judge, is it? Your Honor, I think when a judge is faced with facts, assuming he has a sufficiently detailed affidavit in front of him, is to say, I find this unreasonable under these circumstances. But what you're now arguing to me is the Section 1983 claim for excessive force and the manner in which the arrest was effected. That doesn't go to the legality of the arrest itself. I'm having the same problem Judge Reimer is having in trying to determine what it is that this piece of paper we call a warrant is actually addressing. Well, part of the problem, Your Honor, is that we have a- we tend to think of a seizure as an instant in time. You grab somebody and you seize them. The problem is this was a siege that lasted over, I believe it was 12 hours. Because Mr. Fisher was actively resisting arrest by arm. But, Your Honor, the Fourth Amendment is as much about our civil right to be free from unreasonable search and seizure in our home as it is also about separation of powers, where the judicial branch is giving oversight to the executive branch. It's no different, for example, than when Congress has oversight over the President. But the Fourth Amendment speaks of reasonableness, and a properly instructed jury found on these facts that the circumstances were exigent. Therefore, the entry and arrest was reasonable and no warrant was required. Except, Your Honor, in order to come to that conclusion, you have to believe that the inference that a jury could have drawn, notwithstanding the absence of evidence, is the only thing that can save the city. Let me ask you a question. What did you argue to that jury? I'm sorry? What did you argue to that jury that would give you the idea that they could only come to an inference? It seems to me that if the jury instructions are as has been suggested here, one should have come up with the idea that what the evidence is here does not show that it could have been obtained during this time. Did you make that argument? Your Honor, I don't believe that I would, based on my position in the case, that I'd be arguing to the jury that they should draw that inference. I think I'd be telling them that there's no evidence for you to make that inference. Oh, I see. So, no evidence at all. Did you make that argument? I would have to review my closing argument. Well, I frankly looked, and I didn't see the argument. And, frankly, I'm wondering then again. We're back with the judge second-guessing the jury. But, Your Honor, isn't that the whole purpose of a Rule 50 motion? Well, I understand, but the evidence in the record is now what I have to look at and determine if, in fact, there's evidence to sustain what the jury did. If there's no evidence, then I have no trouble doing something. But we're not on summary judgment here. We're not making hypotheticals out there. We've got a particular situation where this jury had to decide whether there was an exigency and whether it continued. And then I have to see if there's evidence to sustain that. But I believe, Your Honor, that the standard of review for a Rule 50 motion is the same as summary judgment. And that is all facts viewed in the light most favorable to the non-moving party. I understood. And so I put every – but we don't have to talk about hypotheticals now. We talk about what is the situation in front of us, and was there an exigency, and did it continue? And this jury found that it did. But there was no evidence that it did. So your point is that it was an unreasonable inference for the jury to have drawn here that the officers could not have obtained a warrant in time? Yes, Your Honor. That's what the district court found. In time, at what point in time? At what point in time are you saying that they could have obtained a warrant? Well, Your Honor, I made the concession in my arguments below that the initial contact, the first four hours, there was a limited number of officers available, and it probably was reasonable for the jury to infer that they couldn't get a warrant. But it's interesting that in, I believe it was footnote four of the judge's order, granting the Rule 50B motion, she said, you know, there was ample opportunity from the very beginning to at least start the process. We had a CAD transmission. There seemed to be a very basic difference as to whether once you have the exigency and the inability to get a warrant, which you concede, the city says that after that they no longer have ever to get a warrant. That's a legal issue, whatever the record shows. Judge Smith, in his questions to you, said that there is evidence in the record, if there's any evidence in the record, that there was an inability to get a warrant at the outset or continuing during the continuing period. That doesn't seem to be what the city believes the issue is. It says it only needs the exigency at the outset. Which issue did the jury decide, whether there was a reason not to have a warrant at the outset or a reason not to have a warrant on a continuing basis? I don't know that I can answer the question, because the jury instruction told the jury that you must find, as part of your deliberations, that there was no time to get a warrant, and they were given 12 hours worth of time to look at it. Let's talk a little bit about that instruction and the Rule 50 motion. As I understand, the Rule 50 motion is really not quite like a summary judgment motion, because what it does is it tests the evidence of trial against instructions of trial, not against the law as a whole or anything else. What it does is it takes a sieve, which are the instructions, and see if anything got through that's consistent with those instructions. The legal standard is set by the instructions. The record is set by the trial. So we have this instruction that tells the jury that the city was – how is it exactly phrased – was required to get a warrant if it had time to do so? I believe the exact jury instruction I can – I think you should. It's on me. I think you should. Thank you. Do you have an excerpt of the record page, perhaps? Yes, I will. I can give you the excerpt if you want to, counsel. 1610, 1611? I don't know which volume that was. It's volume. Volume VIII. Yes, volume VIII. Well, I don't want them looking for a number eight. And it's pages 1607 through 11. Huh? Pages 1607 through 11. Okay. And where is the – what specific lines and page? It's in 1611. Okay. So the jury is given this instruction. Tell me if you know the history of this instruction. How did it come to be in the – We have Manfredi, Goode, and Alvarez, Your Honor. I don't mean the grandfathers. I meant how did it wind up here on the page? How did the judge come to give this instruction? Was it offered – let me give you some choices here. Was it offered by the plaintiff over defendant's objection? Was it offered by defendant over plaintiff's objection? Was it offered jointly? Was it offered by the courts who are sponsored with no objection from the parties? That's the kind of answer I'm looking for. I believe the parties submitted jury instruction, Your Honor. I can't remember if we argued over this particular one or not. I know that in the final analysis there was agreement because there was no objection to the instruction. So it is your position, and I guess counsel can correct you if you are mistaken on this point, is that this was submitted with the consent of the parties, so the parties agreed, and that includes the defendant, and that this is a correct statement of the law against which the trial would be conducted and against which the ultimate Rule 50 motion would be tested? Correct, Your Honor. Okay. So let's say this – we don't think that this is right, or we can't – have they objected to this appeal, this instruction appeal? We have not filed a cross appeal on this issue. No, no, have they? I don't believe that they have. Was this raised as an issue? Not on the appeal, Your Honor. So are we not required to accept this as the law of the case? And isn't the question not that any of these grand issues we've been asking about what the law should be, but simply whether given an instruction that nobody has appealed and the parties have consented, whether the district judge or the magistrate judge, I believe, in passing the record and determining whether or not there was evidence to support the finding on this instruction? Do we have anything any broader before us in that? I'm not sure I understand your question, Your Honor. We have an instruction. We have an instruction. The parties agreed to it. Nobody's challenged it. The magistrate said, I looked at the instruction, I looked at the record, I find nothing in the record to support a finding by the jury consistent with this instruction. Are we reviewing, is a magistrate judge required to review anything more? Have they raised anything more? Is it possible for us to go beyond it since the parties have not objected to this instruction? Don't we have to take it as a correct statement of the law and simply look at whether the evidence supports a finding? Yes. Thank you. And what evidence is there that meets the second prong of the 1983 case? I mean that these officers somehow knew that this was, in fact, a right that they were violating. Well, for one thing, Mr. Fisher was telling them to get a warrant. Well, Mr. Fisher was telling them. So what does that say to me? I mean, does that say? He also believes there was a Second Amendment, personal rights. He agrees with Judge Reinhardt that there's a Second Amendment right. And that there was a vampire who lived upstairs. I can't speak to all of Mr. Fisher's ruminations, Your Honor. But the bottom line is this judge leapt. We didn't have just a finding that there was a violation of law, but automatically that these officers knew there was a violation of the law, and therefore there ought to be a dollar assessed against the city. What evidence do I have of that on a motion for judgment notwithstanding the verdict? Because, Your Honor, again, it's not a question of looking for evidence that is either wrong or erroneous, because even if there was evidence that everybody could theoretically disagree with, for instance, if the officers had testified. If I have to review this, counselor, I have to look and find if there's evidence in the record that would suggest, since it went to the jury, that would suggest that what I'm doing undoing the jury is wrong. Now, if I'm the judge making those decisions, my first determination is, was there a constitutional violation? This judge said there wasn't. The jury absolutely said there was. This judge said there was. The jury said there wasn't. But then on the second prong of the test, I've got to look at the evidence because the jury said no problem, and now I'm saying there is a problem. Now I have to look at the evidence and say there's some evidence in there that they knew. Well, there's no evidence they knew. I think that's my argument, Your Honor. There's no evidence that they would have known this was a right they were violating. No, there was no evidence that the police made the attempt to get a warrant. No, that's not the question. Counsel, that's not the question. The question is whether the officers should reasonably have known that a warrant was required. I thought you told us earlier that all the officers testified that they didn't think they needed to get a warrant under these emergency situations. Which is why the trial judge ordered as part of her Rule 50B ruling that the San Jose Police Department train its officers now so they know when to do it. The judgment here was not against the officers, as I understand. The judgment was against the city on Manel's claim because there had been a stipulation or some sort of agreement. That's correct. Or admission in the answers to interrogatories, I think it was, was that the city had a policy. What happened here was pursuant to a policy. That's correct. Which I found interesting because that's another interesting question. But that's not on appeal. Nothing was raised as to that on appeal. That's correct, Your Honor. And didn't the jury find as a matter of fact in the special verdict that there was no unconstitutional policy? That these officers had not acted in Manel in violation of some policy to deprive your client of constitutional rights? And the Rule 50 ruling corrected that, Your Honor. So now we've got the same problem with the magistrate judge on question number three that we have with question number one? I'm sorry, but I don't. So we've got the same concern, do we not, with regard to what the magistrate judge did in granting the Rule 50B motion? Well, no, I think the testimony by the officers was that they didn't think they needed one, and there was no testimony that there was a policy that said you don't have to get one under these circumstances. No, Your Honor, I think the Manel liability is the tail on that dog. Once the first determination is made that there was no evidence introduced that proved the constitutional violation, then the Manel liability just follows. But the policy would have to be training or lack thereof on the fact that a warrant is required under these circumstances. And if the training was that you don't need to get one in an emergency, and if that's what the officers thought, then where is the constitutional violation is against the city? Because it was the city that failed to train their officers. Again, the Manel liability is the tail on that dog. Once we have a violation of the Constitution, somebody has to be liable, and that's why the judge judiciously, in my opinion, said, look, that's why Mr. Fisher is not going to award him a dollar. But the meat of her order was train your officers so they know that when they engage in a siege situation and they invade somebody's home, somebody ought to think about a warrant. Let me ask you a question. In the original opinion in this case, the court wrote to judges, we have found no case that directly addresses whether the police must obtain a police warrant during a standoff such as occurred here between the police force and the citizen if any initial exigency dissipates before further intrusions into the home to coerce the targeted individual to submit to arrest. So if they found no case, how is the city to know? This is the original panel. That's an issue, for instance, for qualified immunity for the officers. Well, that's an issue for the city. Why should the city train for something they have no idea they were supposed to do? I think that would be the point of this case. Now they know. Mr. Kilmer. Yes, Your Honor. What is your response to the city's reliance on Michigan v. Tyler? That's the fire case. Michigan v. Tyler was, first of all, a fire investigation, a post-blaze investigation of a furniture store. It wasn't a home. Is that significant? I believe it is, Your Honor. Because I think there's a lesser expectation of privacy in a furniture store than there would be in a person's house, which is specifically mentioned in the Fourth Amendment. Thank you. You can't arrest the difference in terms of arresting somebody in the house than arresting them somewhere else. To arrest them in the house, you need a warrant or exigency, right? Yes, Your Honor. Whereas if they're on the street, you can just arrest them in probable cause alone. You know, what's interesting is the original case. I was just testing my recollection. That is correct, right? Yes, that's correct, Your Honor. It doesn't apply, the special rule doesn't apply to your business, it doesn't apply to your health club where you might be running around in shorts. I'm just saying, you know, there's something special about the home that is different from many other places where you might engage in homey kind of activities, right? That's correct, Your Honor. Thank you. Counsel, you conceded that there was exigent circumstances between 235 when the officers got there and 630, and the magistrate judge finds that after 630 there was no exigency. What happened at 630? What had happened, Your Honor, is that the uncontroverted testimony was that nobody ever saw Mr. Fisher with a gun in his hands. 630 is the last moment that they had contact with Mr. Fisher. No, that was the last moment anybody saw him with a weapon. There was plenty of contact with Mr. Fisher through the throw phone. Is there anything that we know about what Mr. Fisher's whereabouts after 630, other than that he was in the house someplace? Yes, Your Honor, there was constant reporting from the CAD tape. The A-side and B-side snipers kept reporting Mr. Fisher's drinking a beer, Mr. Fisher's sitting down on his couch, Mr. Fisher's moving from room to room, or he just went to the bathroom. Those reports were constantly coming over the radio. I'm sorry, you need to stop. The CAD tapes, how did they know that? Just because they had a throw phone in there with a microphone, or because they could see him? Well, there were two live action reportings of what was going on, Your Honor. There was the digital audio tape of the police officers' radio transmissions between themselves, and then there was the throw phone tape, which was an open mic that was kind of recording all of the ambient noise that was going on. Right, but when you say he's going and he's drinking a beer, somebody had a line of sight on him at that point. Yes. How was that? Was it through the scope, through binoculars? There was testimony that the officers were observing him through rifle scopes. I'm not certain, although I'd be happy to search the record and file a letter brief. I believe there was testimony about binoculars, too. Did that testimony indicate whether he was armed at that time, whether he was carrying something on his back, or whether he had anything in his pockets, or whether he had a beer in one hand and a rifle in the other? Your Honor, the record from the trial was that 6.30 a.m. was the last time anybody saw Mr. Fisher with a gun in his hands. Now, whether he had one hidden on him, there was some later testimony that maybe he had a handgun. Did he have any handguns in the house? No, he did not. These were all rifles? Correct. Okay, thank you. Time's up. Thank you. I believe there were a couple minutes left for a bubble on the city side. Did you object to this jury instruction? No, Your Honor. Okay, did you appeal it? No. The jury instruction was not objected to or appealed by us. Why isn't this the case, then? You consented to this as a law applicable. The judge did what the judge was supposed to do, which is at the end of the trial test the evidence that came in against the law, as you all agreed it was, found it lacking, and entered the verdict against you. The magistrate substituted her judgment for what the jury reasonably found. Let's say she didn't. Let's say that, in fact, when we go through the record, word for word, we find that, in fact, there is nothing in there to satisfy this requirement, which you say that they were required to get a warrant, if I read the instruction correctly, and that there was plenty of time for them to get a warrant, and they didn't. The jury instructs, the instruction instructs the jury to consider this and see whether there was time. They say there was responsibility to get a warrant and to test whether there was time to get a warrant. And let's say we look through the record and we found absolutely nothing to support the finding that there was not enough time to get a warrant. There's lots of evidence to support that. No, no, no, I understand. I understand, but you're not fighting my question. Let's say we were to read through the record and disagree with you on that. Would that be the other case? You know, you agree to this as the applicable law. The record is what the record is. Why wouldn't that be a sort of memo, random disposition, a firm of what the district court did here? Well, we think the jury was part of it. Even if we have some doubts that this is a correct statement of the law, you haven't appealed it. You didn't object to it. The jury was properly instructed and they found that the police department was not liable. And that was a reasonable finding on the facts. The instruction says the agency... So tell me what was this plenty of evidence that they couldn't have gotten a warrant. There was an armed standoff. There was moment-to-moment danger, hour after hour. Mr. Fisher had pointed guns at the officers. You think the jury found that if they had taken one guy off the line to make a phone call to the DA and told the DA, get a warrant as soon as you can, that that would have endangered the situation? Is that what you're saying? That's looking at this in hindsight. I'm asking a question. The police officers didn't know. I'm asking a question. You don't like my question. That's fine. But I would like... I do want to answer your question. Okay. So why don't you answer it? Don't tell me that it's irrelevant. I mean, is that the point, that if they had taken one guy off the line, you know, and they had said, go call the DA and see if you can get a warrant going, that that would have sort of endangered the situation? This would have given Mr. Fisher a chance to bust through the line and make his way to Mexico? Is that what you're saying? Well, the jury didn't find that, and Mr. Fisher conceded the... Well, the jury was trying to find whether or not they had reasonable time to get a warrant, and they apparently found that there was not time to get a warrant. And that's something that can be tested. We can look at the evidence and see is there stuff in the record that says that a reasonable jury could find that they didn't have time to get a warrant. And I'd like you to explain to me how it is, what it is in the record that a reasonable jury could find when you've got this place surrounded by 60 cops for hours and hours and hours on end, how it is that they couldn't pull one guy off to make a phone call. There were not that many officers there in the early morning hours. And by the time the SWAT team arrived and surrounded the place, they had to evacuate the neighbors so that people wouldn't be endangered by stray bullets. Mr. Fisher concedes. How about when the... No, no, that's fine. But they were inspected. The jury were inspected. They were supposed to get a warrant anyway. That's the law. That's the law of the case. They certainly had to have a warrant to justify the initial seizure, the initial arrest. Once he was under arrest, there was no more requirement to get a warrant. The arrest was done. He was just resisting. Was the jury told that? I'm sorry? Was the jury told that? Not specifically in the instructions. That was never argued. But they were properly instructed. They said that the Fourth Amendment seizure and arrest occurs when a police officer or officers by means of physical force or show of authority restrains the liberty of a citizen in such a way that a reasonable citizen... But read what the instructions say. Furthermore, the presence of excessive circumcision necessarily implies that there is insufficient time to obtain a warrant. And therefore, defendants must show that a warrant could not have been obtained in time. And if you put those two together... What is in the record that shows that supports a finding that defendants showed they could not have obtained a warrant in time? The police were waiting for backup from the SWAT team, and there are a number of cases from this circuit that say waiting for backup is fine. And then when the SWAT team arrives, how many hours was it between that time and the time that they actually put handcuffs on Mr. Fisher? It was about 7.30 to... Six hours. Six hours, yes. Okay. And he was under arrest during that time. To support the showing that they could not, as instructed by the judge, not objected by you, not appealed by you, showing that they couldn't have obtained a warrant at that point. You can see that at that point they had enough officers so he couldn't get away. They had evacuated everybody around. All they're doing is sitting around watching the prices. What is it to show that they met their burden as instructed by your consent, by the judge, to show that this instruction was the finding required here, was in fact supported by the record? You can disagree with this reading of the instruction. This instruction doesn't require the jury to find that the exigency continued throughout the whole standoff. They were properly instructed on when an arrest occurred. And we don't know exactly what went on in the jury room, but this instruction was proper. He was arrested at least by the early morning hours. And furthermore, even after that, the jury could have considered, could have reasonably considered, that this was a moment-to-moment standoff. The police didn't know. They probably expected that or they could have expected that the standoff would end at any moment, whether it was through deadly force or Mr. Fisher coming out and surrendering. And the standard is impracticability. What did you argue to the jury? What did you argue to the jury on this instruction? I don't have that in front of me right now. But I don't think this instruction was, I mean, the judge read the instruction to the jury. The jury had the instructions with them in the delivery room. Was there an argument made vis-à-vis that instruction? On this specific point, I don't think so. And counsel for Mr. Fisher never questioned the instruction. I gather that when you didn't, you know, neither party apparently objected to this instruction. So I gather if I were to study the law in this area, the law would support that instruction. That's absolutely correct. Okay. Okay. Thank you. The case is argued. We'll stand submitted. Go ahead, Jones. All rise.
judges: Kozinski, Pregerson , O'scannlain, Rymer , Thomas , Gould , Paez , Bybee , N. Smith